JOSÉ A. CABRANES, Circuit Judge,
concurring:
I concur fully in Judge Newman’s characteristically careful and comprehensive opinion, which seeks to hew closely to the relevant Supreme Court and Second Circuit precedents, including the Supreme Court’s decision in Bell Atlantic v. Twombly, — U.S. -, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That said, it is worth underscoring that some of those precedents are less than crystal clear and fully deserve reconsideration by the Supreme Court at the earliest opportunity; to say the least, “the guidance they provide is not readily harmonized,” Maj. Op. at 153.
Most importantly, the opinion’s discussion of the relevant pleading standards reflects the uneasy compromise — forged partially in dicta by the Supreme Court in Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) — between a qualified immunity privilege rooted in the need to preserve “the effectiveness of government as contemplated by our constitutional structure,” Harlow v. Fitzgerald, 457 U.S. 800, 820 n. 35, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure.
Here, that uneasy compromise presents itself in a case brought by Javaid Iqbal, a federally convicted felon now residing in his native Pakistan. Iqbal does not challenge his arrest in the aftermath of 9/11, his detention, his conviction, or his apparent subsequent deportation. Iqbal instead challenges his separation from the general prison population at the Metropolitan Detention Center and his treatment during that separation. He claims that his separation stemmed from a general policy authorized at the highest levels of government in the wake of 9/11. But most, if not all, of the assertedly unlawful actions in his complaint — including the decision to place plaintiff in the ADMAX SHU and the abuses which purportedly ensued there— are alleged to have been carried out by defendants much lower in the chain of command.
Nevertheless, as a result of the Supreme Court’s precedents interpreting Rule 8(a), even as modified by the “plausibility stan *179 dard” established in Bell Atlantic, 127 S.Ct. at 1968, it is possible that the incumbent Director of the Federal Bureau of Investigation and a former Attorney General of the United States will have to submit to discovery, and possibly to a jury trial, regarding Iqbal’s claims. If so, these officials — FBI Director Robert Mueller and former Attorney General John Ashcroft — may be required to comply with inherently onerous discovery requests probing, inter alia, their possible knowledge of actions taken by subordinates at the Federal Bureau of Investigation and the Federal Bureau of Prisons at a time when Ashcroft and Mueller were trying to cope with a national and international security emergency unprecedented in the history of the American Republic. In Bell Atlantic, the Supreme Court has quite rightly expressed concern that “careful case management” might not be able to “weed[] out early in the discovery process” an unmeritorious claim in private civil antitrust litigation, see Bell Atlantic, 127 S.Ct. at 1967, and might have limited success in “checking discovery abuse,” id. This concern is all the more significant in the context of a lawsuit against, inter alia, federal government officials charged with responsibility for national security and entitled by law to assert claims of qualified immunity. Even with the discovery safeguards carefully laid out in Judge Newman’s opinion, it seems that little would prevent other plaintiffs claiming to be aggrieved by national security programs and policies of the federal government from following the blueprint laid out by this lawsuit to require officials charged with protecting our nation from future attacks to submit to prolonged and vexatious discovery processes.
The decision in this case may be required by the faithful application of the relevant precedents by a court of inferior jurisdiction. But a detached observer may wonder whether the balance struck here between the need to deter unlawful conduct and the dangers of exposing public officials to burdensome litigation' — a balance compelled by the precedents that bind us — jeopardizes the important policy interest Justice Stevens aptly described as “a national interest in enabling Cabinet officers with responsibilities in [the national security] area to perform their sensitive duties with decisiveness and without potentially ruinous hesitation.” Mitchell v. Forsyth, 472 U.S. 511, 541, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (Stevens, J., concurring in the judgment).[1]

. The Supreme Court's recognition in Bell Atlantic that "proceeding to ... discovery can be expensive," Bell Atlantic, 127 S.Ct. at 1967 has particular resonance where, as here, discovery would not only result in significant cost but would also deplete the time and effectiveness of current officials and the personal resources of former officials. Indeed, as Justice Stevens noted, "[plersons of wisdom and honor will hesitate to answer the President’s call to serve in these vital positions if they fear that vexatious and [in some cases] politically motivated litigation associated with their public decisions will squander their time and reputation, and sap their personal financial resources when they leave office." Mitchell, 472 U.S. at 542, 105 S.Ct. 2806 (Stevens, J. concurring in the judgment); see also Harlow, 457 U.S. at 814, 102 S.Ct. 2727 (noting the "danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties" (alteration in original) (internal quotation marks omitted)).